[*Grand-Isle,*
*January,*
*1826.*

ELISHA BOARDMAN, plaintiff below, *vs.* ABNER KEELER and NATHANIEL HEALEY, defendants below.—*IN ERROR.*

Where two judges, holding the County Court, cannot agree upon a question of law, which is material in the issue, and upon which they are requested to instruct the jury, it is their duty to charge the jury upon the point, either one way or the other; or, to suspend the trial till another term, on account of their disagreement.

In ordinary cases of sales of personal property, if the possession remain in the vendor, it is a *fraud in law,* and the sale is void, as against the creditors of the vendor.

But, this rule does not extend to the case of *publick sales,* made by the sheriff.

If the debt be fictitious and colourable merely, upon which a publick sale is had, and the property remain in the possession of the debtor, it is *a fraud in fact,* and the sale is void, notwithstanding its publick character.

THE plaintiff brought his action of trespass against the defendants, before a justice of the peace, for taking and driving away three cows and three heifers, of the value of one hundred dollars, which action was carried, by appeal, to the county court.

The defendants pleaded the general issue; and gave notice under the statute, that they should justify the taking of the said

animals, as the property of one *Samuel Campbell*, by virtue of an execution in favour of said Keeler, against the said Campbell, which the said Healey levied upon the cattle, by the direction of Keeler.

*Grand-Isle,*
*January,*
*1826.*

Boardman
*vs.*
Keeler, *et al.*

The plaintiff claimed the cattle by virtue of a previous purchase thereof, at a sheriff's sale, upon an execution in *his own* favor, against the same Samuel Campbell.

The cause was tried at the September term of Grand-Isle county court, 1824. On the trial, it appeared in evidence, that the animals were originally the property of Campbell—that on the *fourth* day of January, 1821, they were sold by the sheriff, at publick vendue, upon an execution in favour of the plaintiff, against the said Campbell—that on that occasion, one *Henry Boardman*, as the agent of the plaintiff, bid off the animals, and put them into the care, keeping and possession, of one *Thomas Anderson*, on the farm of the said Campbell—that Anderson had before been the servant and hired man of Campbell, and was, during these transactions, a boarder in his family, working for him two days in the week to pay for his board. That the said Henry Boardman directed the said Anderson to take care of and feed the said animals, for the plaintiff, out of the hay then in said Campbell's barn, (which the plaintiff had also purchased at the same sale,) and so left the animals in the care of Anderson, on the premises of Campbell.

It also appeared, that on the *eighth* day of the same January, the defendants levied the execution of Keeler on the same animals, as the property of said Campbell, in the manner described in their notice—that, on that occasion, Anderson notified the defendants, that the cattle were the property of the plaintiff; that he had purchased them at a sheriff's sale, and put them into his (Anderson's) care to keep; that he had taken care of them for the plaintiff; and he then forbid the defendants taking, and directed them not to take the cattle.

The counsel for the defendants offered to prove, and insisted that they had proved, that the property in question remained in the possession of Campbell, after the sale to the plaintiff, in the same manner that it had done previous to the sale; and contended, among other things, that the sale was fraudulent in point of fact, and made to defeat the creditors of Campbell.

The counsel for the plaintiff requested the Court to charge the jury, that the leaving the property in possession of Anderson, as agent and servant of the plaintiff on the premises occupied by said Campbell, was not fraudulent in itself, and that it could not, in consequence of being left on the premises under those circumstances, make the sale to the plaintiff void, as against Keeler, a creditor.

The counsel for the defendants requested the Court to charge the jury, that if they found that the property remained in the possession of said Campbell after the sale, and was in his possession at the time of the taking by the defendants, the sale in Boardman was fraudulent, as against creditors, and void. 2d,

*Grand-Isle,*
*January,*
*1826.*

*Boardman*
*vs.*
*Keeler, et al.*
That, if they found that the property, after the sheriff's sale, went into the possession of the said Anderson, while he lived with Campbell, and that the cattle were kept in the same situation, and in the same manner after the sale as before, the sale was fraudulent and void. 3d. That if they found the sale to have been fraudulent in fact, the plaintiff could not recover.

The court informed the jury, that they could not agree, as to the law, on the first point on which the counsel requested the Court to charge, (there being only two judges on the bench) and that they should not charge the jury on that point. But the court did charge the jury, that if they found fraud in any part of the transaction, to find for the defendants; and that if they found no fraud, and that the consideration was good, and the transaction throughout *bona fide,* to find for the plaintiff.

The jury returned a verdict for the defendants. The charge having been excepted to, and a bill of exceptions allowed, the plaintiff brought this writ of error, assigning for errors,

1. The common error.

2. The omission of the Court to instruct the jury upon the point requested.

*Aldis* and *Smalley,* for the plaintiff, referred the Court to 2 *Bos.* and *Pull. Rep.* 59, *Kyd* vs. *Rolinson.*—4 *Taunton's Rep.* 823, *Watkins* vs. *Birch, et al.*

*Swift,* for the defendants. It appears from the bill of exceptions in this case, (though very imperfectly and incorrectly drawn) that two questions were made in the trial of the cause set forth in the writ of error.

1. Was the pretended sale of the property for which the action was brought, by virtue of the execution in favour of the plaintiff against Samuel Campbell, fraudulent in fact?

2. Was the property, so left in the possession of said Campbell, after the sale, as set forth in said bill of exceptions, such as to subject the property to the payment of the debts of Campbell?

1. Although the bill of exceptions does not disclose the facts and circumstances, which tended to show, that the sale under the execution was fraudulent in fact, yet the Court are to presume from the bill of exceptions, that such proof was given; and it was properly left by the Court for the jury to decide on the proof given. It is also to be presumed, from the directions given by the Court to the jury, in this cause, that the jury did find, that said sale was fraudulent in fact.

2. The bill of exceptions discloses facts, from which the Court will be enabled to arrive at the conclusion, that the said sale was fraudulent in law, as the leaving the goods in the hands and possession of the vendor by the vendee, is, of itself, conclusive evidence of fraud.—1 *Cranch,* 309. 2 *T. Rep.* 587. 9 *Johns. Rep.* 337. 11 *Johns. Rep.* 110. 15 *Johns. Rep.* 430. 1 *Camp.* 332.

*Grand-Isle.*
January,
1826.

Boardman
*vs.*
Keeler, *et. al.*

3. If the Court erred in their charge to the jury, they erred against the defendants, and in favour of the plaintiff. To say the least, the charge was as favourable to the plaintiff as it could have been, consistently with the principles of law; for, though the bill of exceptions states that the Court, being divided in opinion, neglected to charge agreeably to the request of the plaintiff; yet, it appears that the Court did proceed to charge the jury more favourably for the plaintiff than he had requested, for that the Court virtually charged the jury to find for the plaintiff, unless they found the sale fraudulent in fact.

4. A mere neglect of a Court to charge a jury, agreeably to the request of a party, however it may be cause of new trial, cannot be the foundation of a writ of error; especially, if that neglect arise from a division of the Court, in opinion, as to the propriety of the request.

The opinion of the Court was delivered by

Hutchinson J. The only questions that arise, upon this writ of error, are, whether the county Court erred in their charge, or in their refusing to charge, as requested; and whether it was error to let the trial proceed, when the Court were unable to agree upon a charge, in point of law, there being two judges only in Court, and they divided in opinion?

The division of opinion in the Court prevented their charging at all, upon what is termed fraud in law, or distinguishing it from fraud in fact. The jury were charged, that, if they found fraud in any part of the transaction, to find for the defendant: but if they found no fraud, to find for the plaintiff. But no instructions were given them upon a point litigated by the counsel, whether the leaving the cattle that were once Campbell's, and sold to the plaintiff, by the sheriff, on an execution against Campbell; whether the leaving these on the farm of Campbell, in the care of Anderson, once a hired man, and now a boarder at Campbell's, were a fraud or not. The plaintiff contends, that this was not a fraud in law; the defendant contends it was. The jury found for the defendant; and he contends they found fraud in fact. But it does not, nor can it appear, what sort of fraud they found; nor whether, what they called fraud, was fraud. The court should have charged the jury one way or the other, upon the point on which they were disagreed, or suspended the trial till another term, on account of their disagreement. As the cause will be sent to another trial, it is proper this Court should express their opinion upon the point on which the county court thus failed to charge. In ordinary cases of sales of personal property, the possession continuing in the vendor, is called a fraud in law, and makes the sale void, as against creditors. This Court has more than once so decided, on the present circuit. Those who see the property remain with its former owner, have a right to presume he is still the owner. The sale is not complete, as against creditors, till a substantial change of possession is effected.

*Grand-Isle,*
*January,*
*1826.*

Boardman
*vs.*
Keeler, *et al.*

Were this subject newly started, I should, for one, be disposed to apply the same rule to sheriffs' sales. The reason is alike in both cases, except the notoriety attending the latter. This notoriety has introduced an exception in their favour. This was decided in the case of *Kid* vs. *Rolinson, 2 Bos. & Pul.* 59, and has been followed by other cases, and must now be treated as settled law. The county court ought, therefore, to have charged the jury, that the leaving of the cattle, thus sold by the sheriff, in the care of Anderson, on Campbell's farm, was not, of itself, a fraud in law that would vitiate the plaintiff's title. But if they should find the plaintiff's debt, for which said cattle were sold, fictitious merely, and made use of to cover the property of Campbell, and keep it from his creditors, that would be a fraud in fact, and would show the plaintiff to have no title to the cattle sued for. As such instructions were not given,

> The judgment of the county court is reversed, and the cause sent to the county court for another jury trial.

*A. Aldis, B. H. Smalley, Jas. Davis,* and *A. Blodget,* for the plaintiff.

*B. Swift, Chs. H. Perigo, J. C. Thompson,* and *J. Smith,* for the defendants.